IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DONI JO LONG                                                                    PLAINTIFF


            v.                        CIVIL NO.        5:10-CV-05077


MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                   DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) under Title II of the Social Security

Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether

there is substantial evidence in the administrative record to support the Commissioner's decision.

*See* 42 U.S.C. § 405(g).


## I.  Procedural Background:

Plaintiff applied for a period of disability and disability insurance benefits, as well as

supplemental security income on June 26, 2006, based on an alleged back injury and pain,

chronic headaches, with mental impairments that became worse as a result (Tr. 144). Plaintiff

was thirty-five years old at the time of the Commissioner's final administrative decision, dated

February 20, 2008 (Tr. 50-63, 114).

Plaintiff's applications were denied initially and on reconsideration and she requested a

hearing (Tr. 64, 67, 72, 74, 76). The ALJ held a hearing in Fayetteville, Arkansas on October 20,

2007 (Tr. 7-45). After the hearing, the ALJ issued a decision finding Plaintiff not disabled (Tr. 50-63). On March 4, 2010, the Appeals Council declined review, concluding that there was no basis to overturn the ALJ's final administrative decision (Tr. 1). Therefore, the ALJ's decision of February 20, 2008, became the Commissioner's final administrative decision.

After considering the evidence of record, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform a range of medium work activity (Tr. 57). Specifically the ALJ found Plaintiff retained the RFC to perform the physical requirements of medium work with some additional mental limitations including: 1) work where interpersonal contact is routine but superficial; 2) tasks are learned by experience with several variables; 3) limited judgment is required; and 4) little supervision required for routine tasks but detailed for non-routine tasks (Tr. 57- 61). The ALJ considered the testimony of a vocational expert (VE) and concluded that Plaintiff could not perform her past relevant, but that she retained the capacity to perform other work that exists in significant numbers in the national economy. Therefore, the ALJ found Plaintiff not disabled (Tr. 55-63).

Plaintiff subsequently filed this claim contending that:  (A) the ALJ did not consider all of Plaintiff's impairments in combination, specifically that the ALJ did not consider her alleged mental limits and/or impairments sufficiently; (B) that the ALJ did not properly evaluate the Plaintiff's subjective complaints; and (C) that the evidence does not support the ALJ's physical RFC finding that Plaintiff retained the capacity to perform medium work activity.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or

-3-

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Applicable Facts

On May 21, 2005 the Plaintiff contends she fell at work and suffered a debilitating injury. There are no medical records to document the injury, nor are there any employment records to document an injury on that above date.

On November 27, 2005 admitted to Northwest Health ER for migraine headaches and was treated and released. (T. 215-218)

On February 6, 2006 admitted to Northwest Health ER for the flu treated and release. (T. 209-212)

On March 9, 2006 admitted to Northwest Health ER complaining of leg, hip, and low back pain for which she was treated and release. (T. 201)

On April 22, 2006 admitted to Northwest Health ER complaining of body aching. (T. 195). The Plaintiff fell asleep while at the hospital for approximately 2hours and then was discharged. (T. 196)

On May 14, 2006 admitted to Northwest Health ER complaining of pain in her tail bone and headaches. (T. 192).  The clinical impression was DDD and she was discharged home

because her condition was noted as improved. (T. 193).

On June 13, 2006 admitted to Northwest Health ER complaining of headache caused by the fall at little Debbie plant 1 year ago (T. 186-187).  The Plaintiff was oriented x3 and the physical exam was normal.  The clinical impression was a headache. (Id. 189)

On June 26, 2006 the Plaintiff filed her application for disability benefits contending that she had a disabling condition as of May 21, 2005. (T. 114)  A Field Office Disability Report was prepared on that day and the Plaintiff indicated that she had filed for Disability Insurance Benefits before in 2004 because of Bipolar disorder but she stated that it was an incorrect diagnosis. (T. 141).  In this report she stated that she could not work because of a back injury and chronic headaches. (T. 144)

On August 16, 2006 the Plaintiff underwent an  MRI scan for her alleged head and pelvis injuries of May 2005 (Tr. 266, 272). The results of Plaintiff's tests fail to support her claims of head, back or pelvis injury. A lumbar MRI revealed minimal bulging at L5-S1 but otherwise unremarkable (Tr. 272). The MRI provided no evidence of fracture, dislocation or destructive lesion, and showed normal facet joints (Tr. 272). In addition, Plaintiff's test found no abnormal paraspinous soft tissue and no spinal stenosis (Tr. 272). A CT of Plaintiff's pelvis and abdomen revealed a normal pelvis but appendicolith (calcified concentration), without evidence of appendicitis (Tr. 267).

On August 22, 2006 the Plaintiff was seen by Dr. Robert Billingsley, Jr., M.D. for a psychiatric examination.  Dr. Billingsley did identify two or more areas with significant limitations in adaptive functioning. (T. 219-225).

On September 18, 2006 a Physical Residual Functional Capacity Assessment was

performed by Dr. Alice Davidson who found that Plaintiff could Occasionally lift 50 pounds, Frequently lift 25 pounds, could stand/walk for a total of 6 hours in an 8 hour day, could sit for 6 hours in an 8 hour day and had no restrictions on her ability to push and/or pull. (T. 229-236). This opinion was reviewed by Dr. Bill Payne on January 9, 2007 and confirmed (T. 299). An additional review was conducted by Dr. Brad Williams on January 26, 2007 the opinion was affirmed. (T. 302).

On September 25, 2006 the Plaintiff's claim for disability and SSI was denied by SSA. (T. 64-69) and the Plaintiff filed her request for Reconsideration on October 11, 2006 (T. 70-71) which was denied on February 2, 2007. (T. 72-75).  Plaintiff filed her request for hearing on February 23, 2007. (T. 76-77).

On November 9, 2006 Plaintiff received an epidural steroid injection for back pain in the L5-S1 area of her spine from Dr. Cannon(T.241-245).

On January 29, 2007 Dr. David J. Tucker, a physician at Gravette Medical Associates, saw Ms. Long for complaints of backache and headache (T.321). In a report of that same date, Dr. Tucker offered an impression of "chronic back pain [and] chronic anxiety", and prescribed Cymbalta, Lyrica, Percocet and Phenergan for her symptoms (T.321).

Ms. Long returned to Dr. Cannon on February 8, 2007 and received another epidural steroid injection for her back pain (T.335).

In a report dated February 22, 2007, Dr. Webb reported that she was suffering from a headache and prescribed Valium and Panlor for her symptoms (T.319).

On May 31, 2007 the Plaintiff began to treat at Ozark Guidance, Inc and the treatment continued through March 12, 2008. (T. 356-end of record)

Dr. Webb saw Ms. Long again on June 7, 2007, for complaints of "periodic leg and back pain" (T.317). His impression was of "lumbar pain [and] anxiety", and he again prescribed Valium and Panlor for Ms. Long's symptoms (T.317).

Ms. Long returned to Dr. Webb on July 2, 2007 and in a report of that same date, Dr. Webb noted that Ms. Long complained of "aches and pains", as well as "arthralgia in her major joints, especially worse in the low back" (T.315). He reported that Ms. Long's symptoms were "unchanged from [the] previous exam" (T.315). Dr. Webb's assessment was of "lumbar pain" and he treated Ms. Long with Depo-Medrol to help alleviate the pain (T.315).

On July 16, 2007 Dr. Alice M. Martinson, M.D., a board certified orthopedic surgeon, examined the Plaintiff and found that the Plaintiff had "no objective signs of musculo-skeletal or neurologic abnormality in her lumbar spine and lower extremities" and that the "minimal abnormality at L5-S1 is not concordant with her complaints" and she placed no work restrictions on the Plaintiff.  (T. 305-306).

On October 11, 2007 Dr. John Yeabower, Jr. M.D. had a cervical spine x-ray and noted that there was no fracture, vertebral wedging, or subluxation and that the cervical disc spaces were preserved, the neural foramina was patent and the C1-C2 alignment was normal. (T. 343). Dr. Yeabower also noted that a CT scan of the brain was within normal limits. (T. 344).

On October 16, 2007 through October 26, 2007 the Plaintiff sought chiropractic treatment with Garry T. Page, Jr., D.C. (T. 337-342).

On October 30, 2007 a hearing was conducted by the ALJ. (T. 7-44).

On February 20, 2008 the ALJ publishes his decision denying benefits to the Plaintiff. (T. 53-63).

On March 18, 2008 a Mental Diagnostic Evaluation was conducted by Dr. Richard Beck, Ph. D. (T. 345-355) who diagnosed the Plaintiff with Major Depression, Recurrent Severe with Post Partum Onset, Generalized Anxiety Disorder, Social Phobia and Cognitive Disorder, NOS on Axis I.  He also found her to have a Obsessive Compulsive Personality Disorder with a GAF of 42-52. (T. 350).  He also found her to be Markedly Limited in her sustained concentration and persistence with some markedly limited aspects in her social interaction and adaptation. (T. 353-354).

### IV.  Discussion:

The ALJ found that the Plaintiff met the insured status requirements through September 30, 2010 and had not engaged in substantial gainful activity since May 21, 2005 her alleged onset date. He further found that the Plaintiff had severe impairments of Back pain, headaches, and depression but that the Plaintiff did not have an impairment or combination of impairments that meets or medically  equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (T. 56).

**RFC:**

The ALJ determined that the Plaintiff retained the RFC to perform at least the full range of medium work except that the Plaintiff was limited to working where interpersonal contact is routine but superficial, where tasks are learned by experience, limited judgment is required, and supervision is very little for routine tasks but detailed for non-routine tasks. (T. 57).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  *Id*.  This includes

medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

### 1. Back and Head Injury:

#### a. Objective Medical Evidence

While the Plaintiff claimed that she suffered a debilitating fall at work on May 2005 she there is nothing in the record to show that the Plaintiff sought any immediate treatment for the injury. The ALJ noted, and it is likewise of concern to the court, that there was no documentation of any kind concerning the Plaintiff's debilitating injury suffered at work. The Plaintiff does not present for treatment until November 27, 2005 when she goes to the Northwest Health emergency room. Her physical exam is unremarkable and she is given a prescription and released. The Plaintiff visited the Northwest Health Emergency Room six times between November 27, 2005 and June 13, 2006 with various complaints but the medical records all show that her neuro/psych symptoms were normal and that she was always alert and oriented and that she had no motor deficits or sensory deficits. (T. 189, 193, 197, 203, 207, 211, 217). At least on one occasion she fell asleep while waiting on treatment. On August 9, 2006 the Plaintiff was

noted to ambulate with a steady gait when she was admitted to the Northwest Health ER (T. 283) and when she was discharged (T. 284).

On August 16, 2006 the Plaintiff underwent an MRI scan for her alleged head and pelvis injuries of May 2005 (Tr. 266, 272). A lumbar MRI revealed minimal bulging at L5-S1 but otherwise unremarkable (Tr. 272). The MRI provided no evidence of fracture, dislocation or destructive lesion, and showed normal facet joints (Tr. 272). In addition, Plaintiff's test found no abnormal paraspinous soft tissue and no spinal stenosis (Tr. 272). A CT of Plaintiff's pelvis and abdomen revealed a normal pelvis but appendicolith (calcified concentration), without evidence of appendicitis (Tr. 267). On October 11, 2007 Dr. John Yeabower, Jr. M.D. had a cervical spine x-ray and noted that there was no fracture, vertebral wedging, or subluxation and that the cervical disc spaces were preserved, the neural foramina was patent and the C1-C2 alignment was normal. (T. 343). Dr. Yeabower also noted that a CT scan of the brain was within normal limits. (T. 344).

On July 16, 2007 Dr. Alice M. Martinson, M.D., a board certified orthopedic surgeon, examined the Plaintiff and found that the Plaintiff had "no objective signs of musculo-skeletal or neurologic abnomality in her lumbar spine and lower extremities" and that the "minimal abnormality at L5-S1 is not concordant with her complaints" and she placed no work restrictions on the Plaintiff. (T. 305-306).

### b. Subjective Complaints:

The Plaintiff made numerous complaints of subjective pain starting with her first hospital visit of November 27, 2005. An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739

F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *See id.*  The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.*  In the present case, the ALJ failed to acknowledge or discuss the factors in his credibility assessment of plaintiff.

### (1) Daily Activities

At the time Plaintiff applied for disability benefits, she provided an account of her daily activities. Among those activities, Plaintiff reported taking care of children, performing household chores, laundry, cooking and cleaning, some yard work, going outside daily, driving a car, shopping weekly, and going out alone (Tr. 152, 154, 155). Plaintiff further reported talking to her friends on the telephone and attending church (Tr. 156). In February 2008 the Plaintiff reported to a therapist at Ozark Guidance that she was in theology school at John Brown University. (T. 370).

Plaintiff's daily activities are contrary to her testimony of disabling pain.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to

visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability

to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th

Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not

interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir.

1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a

neighbor).

On August 15, 2006 she reported to the Northwest Health hospital that she was "working

for her husband".  *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that working

after the onset of an impairment is some evidence of an ability to work).

### (2) the duration, frequency, and intensity of the pain

There was no medical evidence which supported the Plaintiff's allegations of debilitating

pain. *See Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990) (holding that medical evidence

did not indicate a condition which could be expected to produce the level of pain alleged).  The

Plaintiff was at all times treated conservatively by his treating physicians and no physician

recommended any surgical procedure.  *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993)

(holding that treating physician's conservative treatment was inconsistent with plaintiff's

allegations of disabling pain). Therefore, although it is clear that plaintiff suffers from some

degree of pain and discomfort, she has not established that she is unable to engage in any and all

gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) (holding that mere fact that

working may cause pain or discomfort does not mandate a finding of disability); *Woolf v.

Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the

lumbar spine, the evidence did not support a finding of disabled).

**(3) dosage, effectiveness, and side effects of medication;**

According to the Plaintiff's statement at the time of admission to Northwest Health on November 27, 2005 she was on Valium 10 mg as needed. (T. 215).  On February 6, 2006 no medication is noted in the hospital records (T. 209) and on March 9, 2006 she was on naproxen (anti-inflamatory) and pepcid ac.(T. 201).  On May 14, 2006 the Plaintiff reported that she was on Panlor (pain reliever). (T. 191).  On August 22, 2006 when the Plaintiff presented to Dr. Robert Billingsley for a Mental Status Examination she reported she was on Valium and Effexor (anti-depressant) (T. 220) but on September 19, 2006, at the time of her consultive examination with Dr. Donahue she was not on any psychiatric medication nor had she had any mental health treatment for several years.

The record also shows that the Plaintiff was admitted to Northwest Medical Center of Benton County on September 20, 2006 for an overdose when she was found unresponsive at home. (T. 263-264).  It also appears that the Plaintiff did contact Dr. Frank Webb's office on July 2, 2007 and requested Mepergan, a narcotic pain reliever, which Dr. Webb refused at that time(T. 315) but he subsequently did prescribe Mepergan on September 19, 2007. (T.329).  When the Plaintiff presented to her consulting Psychologist, Dr. Back, on March 17, 2008 she admitted that "she got fired by my doctor because I got some hydrocodone at two different places" (T. 347). He had previously prescribed Panlor which is a milder pain reliever. (T. 317).

When the Plaintiff presented to Ozark Guidance, Inc. on May 31, 2007 she reported that she was not taking any medication. (T. 361) but in February 2008 she was placed on Abilify,

5mg.[1] (T. 371).  The court notes that the GAF assessment by Ozark Guidance went from 42 to 60 after the Plaintiff was placed on Abilify.

Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.*  439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

### (4) precipitating and aggravating factors.

The alleged precipitating factor was a back and head injury at work in May 2005.  The court has previously reviewed the evidence concerning the alleged injury.  The Plaintiff does assert another head injury subsequent to her injury at work at the hands of an abusive husband. Again there is no evidence in the file of the injury, when it occurred, the severity or that there was ever any immediate treatment for the injury. As the court has previously noted the CT scan of the Plaintiff was negative.

### (5) functional restrictions

There is no evidence in the file that the Plaintiff ever had any functional limitations put on her by any of her treating doctors. Lack of physical restrictions by doctors is a proper factor upon which an ALJ can rely to discount a claimant's subjective pain complaints. *See Barnes v. Social Sec. Admin.*, 171 F.3d 1181, 1183 (8th Cir.1999).  While the Plaintiff testified that it was

---

[1]Abilify (aripiprazole) is an antipsychotic medicine used to treat the symptoms of schizophrenia and bipolar disorder. www.drugs.com/abilify.html

very hard for her to be around people and to go out it appears that she was attending John Brown University in February 2008. (T. 370).

The ALJ properly considered the Polaski Factors.

## 2. Mental Impairments:

The Plaintiff contends that the ALJ failed to consider her mental impairments in conjunction with her physical impairments.  The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects.  *Delrosa v.  Sullivan*, 922 F.2d 480, 484 (8th Cir.  1991) (citing *Johnson v. Secretary of Health & Human Servs.*, 872 F.2d 810, 812 (8th Cir. 1989.  In the present case, therefore, the ALJ was obligated to consider the combined effect of [Plaintiff]'s physical and mental impairments.  Id. at 484, citing *Reinhart v. Secretary of Health & Human Servs.*, 733 F.2d 571, 573 (8th Cir. 1984); *Wroblewski v. Califano*, 609 F.2d 908, 914 (8th Cir. 1979.  It should be noted that plaintiff alleged numerous impairments.  Under these circumstances, the Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

The Plaintiff did not list a mental impairment in her initial application for benefits and only stated that she could not work because of a fall at work and an injury to her back and head.  The fact that the plaintiff did not allege a mental impairment as a basis for her disability in her application for disability benefits is significant, even if the evidence of a mental impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).   In a subsequent undated Disability Report she did state

that her "memory was worse" and that she was depressed. (T. 165).

Regardless the ALJ had a Mental Status Examination performed by Dr. Robert E. Billingsley, Jr., M.D. on August 22, 2006.  Dr. Billingsley, a psychiatrist,  noted that the Plaintiff informed him that she was on Effexor which is an anti-depressant drug.  She admitted she had a psychiatric hospitalization approximately five years previously  (T. 220).  She denied any delusions or hallucinations. This conflicts with the statement that she gave her consultive psychologist on March 17, 2008 when she stated that she hears voices all the time and had been hearing them for eight years. (T. 345). Dr. Billingsley diagnosed the Plaintiff with a Mood Disorder, NOS on Axis I, no diagnosis on Axis II, chronic pain on Axis III and assessed a GAF of 45.[2]  Dr. Billingsley noted that the Plaintiff's speech was too over-detailed for effective workplace communication. (T. 223).  Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart*  393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527

On September 19, 2006, at the time of her consultive examination with Dr. Donahue the Plaintiff was not on any psychiatric medication nor had she had any mental health treatment for several years.  *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).  Dr. Donahue found the Plaintiff to be Moderately limited in her Activities of Daily

---

[2]A GAF of 41 to 50 indicates "Serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e .g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed.2000)

Living, Maintaining Social Functioning and Maintaining Concentration, Persistence or Pace.  He also determined that she had one or two episodes of Decompensation of Extended Duration. (T. 259).

It is clear that the ALJ formulated the mental limitations set forth by Dr. Billingsley and Dr. Donohue because he limited the hypothetical question to the VE to an individual where the "interpersonal contact is routine but superficial, where the complexity of task is learned by experience with several variable, it uses judgment with limits.  The supervision requires little for routine but detailed for non-routine." (T. 35).

The court also notes that the Plaintiff visited the Northwest Health Emergency Room six times between November 27, 2005 and June 13, 2006 with various complaints but the medical records all show that her neuro/psych symptoms were normal and that she was always alert and oriented and that she had no motor deficits or sensory deficits. (T. 189, 193, 197, 203, 207, 211, 217).  It is also noteworthy that a CT scan of the brain on October 11, 2007 was within normal limits. (T. 344).

**Subsequent Mental Evaluations:**

The Plaintiff has submitted two additional Exhibits subsequent to the ALJ's decision and the court has to determine if these reports would have resulted in the ALJ rendering a different opinion.

The Plaintiff submitted a Mental Diagnostic Evaluation dated March 17, 2008, from Richard D. Back, Ph.D. and the Records from Ozark Guidance, Inc., dated May 31, 2007 through March 24, 2008 after the ALJ had made his ruling. (T. 5).

The regulations provide that the Appeals Council must evaluate the entire record,

-17-

including any new and material evidence that relates to the period before the date of the ALJ's decision. See 20 C.F.R. § 404.970(b). The newly submitted evidence thus becomes part of the "administrative record," even though the evidence was not originally included in the ALJ's record. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir.1992). If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case. See 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances, we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination. *See Nelson*, 966 F.2d at 366; See also *Cunningham v. Apfel,* 222 F.3d 496, 500 (C.A.8,2000)

Thus, in situations such as the present, this court's role is to determine whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." Riley, 18 F.3d at 622. In practice, this requires this court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing. See id.  As the court has oft noted, "this [is] a peculiar task for a reviewing court." Id. Critically, however, this court may not reverse the decision of the ALJ merely because substantial evidence may allow for a contrary decision. See Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993). *Bergmann v. Apfel,* 207 F.3d 1065, 1068 (C.A.8 (S.D.),2000)

## A.  Mental Diagnostic Evaluation by Dr. Back:

On March 18, 2008 a Mental Diagnostic Evaluation was conducted by Dr. Richard Back, Ph. D. (T. 345-355) who diagnosed the Plaintiff with Major Depression, Recurrent Severe with

Post Partum Onset, Generalized Anxiety Disorder, Social Phobia and Cognitive Disorder, NOS on Axis I.  He also found her to have a Obsessive Compulsive Personality Disorder with a GAF of 42-52. (T. 350). This GAF is consistent with the GAF found by Dr. Billingsley in August 2006. Dr. Back, however, found her to be Markedly Limited in her sustained concentration and persistence with some markedly limited aspects in her social interaction and adaptation. (T. 353-354). The Plaintiff acknowledged that she did get fired "last year by my doctor because I got some hydrocodone at two different places. " (T. 347).

The Plaintiff stated that she "hears voices all the time in her head" and that this had been going on for 8 years.  When she met with Dr. Billingsley two years before she made no reference to hallucinations. It also does not appear that Dr. Back had any access to any of the Plaintiff's medical records.

The results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement).*Cox v. Barnhart*  345 F.3d 606, 610 (C.A.8 (Ark.),2003). While all of the mental health evaluations are done by consultive doctors the court does not believe that the ALJ would be likely to change his opinion in light of the report by Dr. Back because of the lack of medical records, inconsistent medical history, and inconsistent reports of activities of daily living.

**B.  Ozark Guidance, Inc. Records:**

The Plaintiff began to treat with Ozark Guidance, Inc. on May 31, 2005 or two years after the reported fall at work that rendered her disabled.  There is no explanation why the record from

this treating source was not made available to the ALJ prior to his determination.

The failure to obtain treatment prior to filing for disability is significant. *Id*.; *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).  As noted previously the Plaintiff did not initially list any mental impairment as the basis for her disability.  The fact that the plaintiff did not allege mental impairment as a basis for her disability in her application for disability benefits is significant, even if the evidence of mental impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

Ozark Guidance, Inc. had an initial Global Assessment of 42 on May 31, 2007. (T. 356). It remained at 42 on June 4, 2007 (T. 364) and October 22, 2007 (T. 368). This is consistent with the GAF score assessed by Dr. Billingsley.  Her GAF improved to 60 [3] on March 10, 2008 the last day of treatment. The records do not attribute a reason for the improvement but the court notes that the Plaintiff was prescribed Abilify, 5mg on February 21, 2008.  Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.*  439 F.3d 1001, 1006

---

[3]A GAF score of 51 to 60 indicates "moderate symptoms ... OR moderate difficulty in social, occupational, or school functioning." DSM-IV-TR at 34.

-20-

(C.A.9 (Or.),2006).

A counselor's note on February 14, 2008 indicated that the Plaintiff had "some kind of serious head injury" (T. 370).  It is obvious that the counselor did not have the Plaintiff's past medical history, particularly the CT scan of the brain on October 11, 2007 which was within normal limits. (T. 344).  The Plaintiff was also complaining of auditory and visual hallucinations about demonic sorts of things but made no such report to Dr. Billingsley two years before. She had stated to Dr. Back on March 17, 2008 that these hallucinations had been going on for eight years.   The counselor also noted that the Plaintiff was going to school at John Brown University which was inconsistent with the representation she made to Dr. Back that she did not get out of the house. .

Since the Plaintiff submitted the above evidence not only after the hearing before the ALJ but after he had rendered his decision this court had to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing. *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir.1994)). As we have oft noted, "this [is] a peculiar task for a reviewing court." Id. Critically, however, this court may not reverse the decision of the ALJ merely because substantial evidence may allow for a contrary decision. *See Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993). *Bergmann v. Apfel*  207 F.3d 1065, 1068 (C.A.8 (S.D.),2000).

In reviewing the consultive examination by Dr. Back and the Ozark Guidance, Inc. records the court believes that the ALJ would have give little weight to the evidence and that his decision would have remained the same.

**V.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial

evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The

undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this May 31, 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE